Otto C. Jaeger, S.
In this executors ’-trustees ’ accounting, the surviving natural parent (the father) of an infant beneficiary under decedent’s will has petitioned this court to direct payment of the infant’s share of the trust corpus known as 11 Fund B ” to the infant’s father “ as the lawful guardian of the person and property of (the infant) under German law.” “ Fund B ” was bequeathed by decedent in his "will to his trustees for the benefit of his wife until her death. Upon the death of his "wife, the decedent directed that the undistributed principal of the trust fund be paid to his then living issue. Under, the provisions of the first codicil to his will, the decedent directed that if no issue of his shall be then living, ‘ ‘ the said property shall be paid to my wife’s daughter, Dianna Ocker, if she is then living ”. The decedent died on October 8, 1967 survived by his wife only. He left no issue. The wdfe died on October 19, 1971 and the wife’s daughter, Dianna Ocker is the infant above referred to who now is vested with the “ property ” of “ Fund B ”, which approximates $500,000.
Previously, the decedent’s wife was married to the infant’s father (a German national) and this infant was born of that marriage. The infant, now 15 years of ¡age, lived in Westchester County from the time of her birth until she moved with her father to West Germany in 1971.
Initially the father provided this court with excerpts from the German statutes governing guardianships in that country together with the written opinion of German counsel to support the allegations in his petition. The petition alleges substantially that under German law the natural parent of an infant is the rightful guardian of the infant’s person and property; that guardianship status is conferred directly by operation of German law; that the creation of such status requires neither the action of any German court nor the issuance of any docu *421 ment by any instrumentality of the German government attesting to such status; and that as a matter of German law no security need be posted by the father in connection with his administration of guardianship funds. According to the German counsel’s opinion appended to the petition, the furnishing of security would only become necessary if the father, in administering the assets of the infant, ‘ ‘ violates his duties and would then endanger the assets (Secs. 1667,1668, German Civil Code) ”.
It further appears from the opinion of German counsel that the father must submit to the appropriate ‘ ‘ Surrogate’s Court ’ ’ in Germany a statement of the assets of the infant; that he must supplement such statement if the infant thereafter should acquire additional assets; and further must invest these assets in certain kinds of securities. However, the accounts ‘ ‘ containing the securities belonging to infant ’ ’ are not identified as such in any way and “ [o]nly if the court learns that the legal representative endangers the assets of the child * * * can the Court demand that an account be rendered.” Moreover, German counsel clearly points out that if the proceeds of the assets exceed the needs for the infant’s support, the legal representative (guardian) may use the excess portion for himself personally. The 'Statute, section 1649 of the German Civil Code provides in part as follows: ‘ ‘ The parents may use the proceeds of the assets (which are not needed for the proper • administration of the assets and for the support of the child) for their own support and for the support of minor unmarried brothers and sisters of the child to the extent that this, considering the financial and employment situation of the parties, is equitable. This right terminates with the marriage of the child.”
The opinion further states that the nationality of the child (in this case it appears the infant has dual citizenship) is irrelevant to the powers given the father over his daughter. Also, under German law the infant does not attain majority until age 21 ‘1 unless [the infant] has been declared as of age. ’ ’ No explanation of this exception has been furnished.
As one can easily see, there is a marked difference between the laws of New York and Germany with respect to judicial control over guardians and the funds committed to their care, as well as the purposes for which such funds may be used. In fact, German counsel himself recognized this disparity when he stated: ‘ ‘ Apparently, the discretion in the administration and the use of assets belonging to minors is in Germany much greater than in U. S. A. There, for good reasons, one watches much better over the administration of assets of minors.”
*422 In a preliminary report to the court, the guardian ad litem appointed for the infant in this proceeding appended copies of correspondence received from the infant and her father among which is a four-page list of proposed expenditures which the father is desirous of making on behalf of the infant. In addition to the normal items of support and maintenance, there appear proposed monthly expenses for beauty care, riding lessons, skiing lessons, tennis lessons, club membership dues, entertainment, additional rentals, a cleaning woman, auto insurance, upkeep and gasoline. These are insignificant by comparison. The list continues: winter clothes, sports clothes and outfits $3,000; sporting equipment $500; furniture, carpets, pictures, etc. $5,000; color television, portable T. V., record player, etc. $1,000; new automobile $5,000; family parties, summer camp and gifts to relatives $3,000. And last but far from least — a dwelling to house all the purchases: the price — $85,000.
After filing his petition and submitting the above list of contemplated expenditures, the father opened a “ blocked ” account in the Deutsche Bank in Ulm, West Germany for remittance (deposit) of the infant’s inheritance. A “blocked” account simply means that prior approval must be obtained from the appropriate German court in order to make withdrawals. The documents filed by the father indicate that the withdrawals will be permitted by the German court on the basis of “ the welfare of the child ’ ’. The court shares the concern expressed by the guardian ad litem as to whether such an arrangement would adequately safeguard the infant’s funds. Under German jurisprudence as explained by German counsel ‘ ‘ the welfare of the child ’ ’ encompasses a much broader concept than readily understood in this jurisdiction (cf. SCPA1713). There is no assurance that the father would not be able to obtain authorization to make the contemplated expenditures listed above.
Further, the concern of this court would not be allayed were it to order the infant’s funds to be deposited in a branch of an American bank doing business in West Germany and be there subject to the courts and laws of Germany as suggested by counsel on the basis of Matter of Papazoglou (N. Y. L. J., July 11, 1973, p. 17, col. 7 [Queens County]). In that case Surrogate Laurino was concerned with a widow and her two infant children, all of whom were Greek nationals living in Greece. The distinction between that case and this case, as the guardian ad litem points out, is that in Greece the natural guardian appears to be restricted to the use of income and the laws of Greece pro *423 vide for controls which Surrogate Laurino found to be satisfactory.
EPTL 13-3.4 (subd. [b], par. [2]) governs the payments or delivery of property to foreign fiduciaries. The statute states that in the case of a testamentary disposition no person or fiduciary shall be released and discharged who has reason to believe that such foreign fiduciary or the person whom he represents would not have the benefit, use or control of such disposition. Under the facts and circumstances present here, the court believes the needs and interests of this infant will best be served by directing the retention of the fund here in New York. Accordingly, the father’s petition to direct payment to him of the infant’s share of the trust corpus known as “ Fund B ” as the ‘6 lawful guardian of the person and property of the infant under German law ’ ’ is denied.
The decree to be made herein shall contain a provision for the payment of the infant’s share of the trust corpus known as “ Fund B ” to a guardian of the infant to be appointed by this court upon proper application therefor provided that said guardian’s letters shall issue within 60 days from the date of the decree herein; otherwise the infant’s share of the trust shall be deposited with the Commissioner of Finance of Westchester County for the infant’s benefit.
Allowances in lieu of commissions to the estate of the deceased coexecutrix-cotrustee are allowed and approved as computed in schedule “ J ” of the executors’ account and schedule “ H ” of the trustees’ account.