OPINION OF THE COURT
Renee R. Roth, S.
As an incident to their final account, the executors of the estate of Thomas Mantzouras request the court to approve distribution of an infant’s legacy to his father, a nondomicili *629 ary alien, as custodian pursuant to the Uniform Gifts to Minors Act (UGMA) (EPTL 7-4.9).
Under his will, Mr. Mantzouras made a substantial disposition ($450,000) to his grandnephew, Elias Spanos. At the time testator executed his will in 1987, Elias was 12 years of age. He is presently 16 and lives in Greece with his father, an officer in the Greek Army. Testator’s will grants his executors broad discretion respecting the manner of distributing the bequest to Elias. In relevant part, article fourth provides: "Payment or application of income or principal to or to the use of a minor under any of the provisions of this Will may be made by my Executors in any one or more of the following ways: (a) by paying the same to the parent, guardian or other person having the care and control of such minor; (b) by paying the same directly to the minor; (c) by paying the same to any relative of the minor as custodian for the minor under any applicable Gifts to Minors Act; (d) by expending it in such other manner as my Executors in their discretion believe will benefit such minor.”
The executors claim that an outright distribution of the funds under the UGMA to the infant’s father as custodian, with a New York bank as depository, provides the most efficient and least expensive method of effectuating testator’s wishes. The guardian ad litem appointed to protect the interests of Elias opposes such application on the ground that if an unbonded, nondomiciliary alien is appointed custodian of the funds, no safeguards will exist to ensure "that my ward’s legacy will be distributed to him intact”.
New York’s statutes governing such gifts to minors (EPTL 7-4.1 — 7-4.13) were primarily intended to facilitate lifetime gifts to infants (EPTL 7-4.2) with attendant annual tax benefits (Internal Revenue Code [26 USC] § 2503 [c]). Since the donor of such gift designates the custodian (frequently himself or herself) over what was originally his or her own money, our statutes vest enormous discretion in such custodians with respect to management and distribution of the fund.
In such respect, EPTL 7-4.4 (b) provides: "The custodian shall pay over to the minor for expenditure by him, or expend for the minor’s benefit, so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education and benefit of the minor in the manner, at the time and to the extent that the custodian in his discretion deems suitable and proper, with or without court order, with *630 or without regard to the duty of himself or of any other person to support the minor or his ability to do so and with or without regard to any other income or property of the minor which may be applicable or available for any such purpose.”
In addition to lifetime gifts, New York now also permits gifts to minors to be made by means of wills (EPTL 7-4.9). The will may designate a custodian, or, in the absence of such designation, it is the executor who appoints the custodian— whether himself or herself or another. A custodian selected by the executor has the same broad power over management and distribution as does a custodian appointed by the donor during his or her lifetime (EPTL 7-4.9 [d]).
The UGMA appears to be unique in New York law with respect to the unlimited discretion given to a custodian over an infant’s funds. For example, payment of up to only $5,000 may be made to a parent or guardian for the benefit of an infant without joint control of the court (EPTL 11-1.1 [b] [19]); similarly, the public administrator is allowed to distribute only $1,000 to a minor’s parent or custodian (SCPA 1123 [2] [g]; 1213 [2] [a], [e]); distribution may be made to a nondomiciliary who qualifies as an ancillary guardian or to a foreign fiduciary only upon the posting of a bond (SCPA 1716 [1], [4]; 2221; see also, Matter of Manville, 76 Misc 2d 419).
It is clear that the UGMA gives the unpaid custodian powers that are "extremely broad and sweeping” (Matter of Levy, 97 Misc 2d 582, 587; see, Speyer v Speyer, 142 AD2d 726). As noted in the above-quoted EPTL 7-4.4 (b), there is no requirement that the custodian retain the fund intact. On the contrary, the statute in specific terms authorizes the custodian to pay over to the minor, without court order, so much or all of the fund as the custodian in his sole discretion deems suitable and proper.
The UGMA is silent with respect to the custodian’s residency or citizenship. Historically in the Surrogate’s Court, the eligibility of a person to serve as fiduciary is governed by SCPA 707, which requires that a nonresident alien may serve only with a resident of this State. But is a custodian a fiduciary? EPTL 1-2.7 includes a custodian under the definition of fiduciary; but a custodian is not included in the definition of a fiduciary under SCPA 103 (21). Furthermore, since letters do not issue to a custodian, it would appear that SCPA 707 does not apply. Indeed, it is clear the draftsmen of the UGMA intended that in most instances a custodian would be appointed and serve without court involvement.
*631 In the absence of a specific requirement in the UGMA that a custodian must be a resident or citizen of the United States, a nonresident alien may be named custodian. The court concludes that, surely to the extent that a donor selects the custodian, he or she is free to choose anyone without restriction. But if the court had to select a successor, it clearly would respect the guidelines established in SCPA 707. For example, if the donor was a felon, under the UGMA he could name himself custodian; the court, however, would not do so for the same considerations that prompted the enactment of SCPA 707. In the performance of their duties, including the selection of a custodian, the executors are, as always, required to act prudently.
Nothing in the UGMA prevents the executors from restricting the power of the custodian with respect to the selection of a bank or the nature and amount of withdrawals or the appointment of a cocustodian. If the executors believe that although the UGMA does not require that a custodian be a resident or citizen of the United States, it might nonetheless be imprudent to appoint a nonresident alien who is not subject to the court’s jurisdiction and cannot obtain a bond, they have other alternatives under the will and as mentioned above.
Having been given broad discretion under the will and the UGMA, the executors should make their own decision with respect to the distribution of Elias’ gift. There is no statutory reason or necessity to seek the approval of this court. To the extent the petition seeks such approval, it is denied.
The account being proper in all other respects is settled. Submit decree on notice accordingly.